# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANDREW FRANCISCO VELASQUEZ,<br><br>Petitioner,<br><br>v.<br><br>STU SHERMAN,<br><br>Respondent. | Case No. 1:15-cv-01472-DAD-EPG-HC<br><br>FINDINGS AND RECOMMENDATION RECOMMENDING DENIAL OF PETITION FOR WRIT OF HABEAS CORPUS |

Petitioner Andrew Francisco Velasquez is a state prisoner proceeding *pro se* with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. In the petition, Petitioner raises the following claims for relief: (1) ineffective assistance of appellate counsel; (2) ineffective assistance of trial counsel; and (3) cruel and unusual punishment.

For the reasons discussed herein, the Court recommends denial of the petition for writ of habeas corpus.

**I.**

**BACKGROUND**

On March 25, 2011, Petitioner was convicted by a jury in the Tulare County Superior Court of: shooting at an inhabited dwelling/house (count 1); five counts of assault with a firearm (counts 3–7); carrying a loaded firearm by a gang member (count 9); misdemeanor carrying a loaded firearm (count 10); and resisting, delaying, obstructing a police officer (count 11). The

jury also found true the special allegations that: the crimes were committed for the benefit of a criminal street gang (counts 1, 3–7, 10); Petitioner personally discharged a firearm (count 1); and Petitioner personally used a firearm (counts 3–7). (3 CT[1] 865–79). Petitioner was sentenced to an imprisonment term of thirty-eight years to life. People v. Velasquez, 211 Cal. App. 4th 1170, 1171 (Cal. Ct. App. 2012). On December 12, 2012, the California Court of Appeal, Fifth Appellate District, vacated Petitioner's conviction for count 10 and reversed the convictions for counts 3, 4, 5, and 7. Id. at 1178. The California Supreme Court denied Petitioner's petition for review on March 20, 2013. (LD[2] 31). On June 13, 2013, the abstract of judgment was amended to reflect the California Court of Appeal's opinion, but Petitioner's sentence did not change because the original sentence did not impose any time for the affected counts. (LD 32a).

Subsequently, Petitioner filed a petition for writ of habeas corpus in the Tulare County Superior Court, which denied the petition on February 6, 2014. (LD 32; ECF No. 1 at 142–43). Petitioner then filed a habeas petition in the California Court of Appeal, Fifth Appellate District, which denied the petition on October 2, 2014. (LD 33; ECF No. 1 at 146). Petitioner filed a habeas petition in the California Supreme Court, which denied the petition without prejudice on May 13, 2015. (LD 34; ECF No. 1 at 120).

On September 24, 2015, Petitioner filed the instant federal petition for writ of habeas corpus. (ECF No. 1). Respondent has filed an answer to the petition, and Petitioner has filed a traverse. (ECF Nos. 16, 20).

## II.

## STATEMENT OF FACTS[3]

> Adolfo Hurtado returned home from work about 9:45 p.m. on the day of the shooting. He was in his bedroom asleep when he heard knocking on his bedroom door and was told by a family member that he had heard gunshots and the family was afraid he had been shot. Adolfo's bedroom was located at the back of the residence. Inside the residence at the time were Adolfo's mother, father, and his brother Oliverio Hurtado. Adolfo went to the front yard of the house. The only

---

[1] "CT" refers to the Clerk's Transcript on Appeal lodged by Respondent on January 27, 2016. (ECF No. 17).
[2] "LD" refers to the documents lodged by Respondent on January 27, 2016. (ECF No. 17).
[3] The Court relies on the California Court of Appeal's December 12, 2012 opinion for this summary of the facts of the crime. See Vasquez v. Kirkland, 572 F.3d 1029, 1031 n.1 (9th Cir. 2009).

person he saw outside was his brother Juan Hurtado. He did see a car go by with its lights off. Adolfo thought it was a small Honda.

The house sustained a broken window near where Adolfo's mother was sleeping in the garage and a hole in the wall near the kitchen area. Five separate bullet holes were found in the structure. Ten 9–millimeter shell casings and one intact cartridge were located in the street about 100 feet from the residence. Three bullet fragments were located near the structure.

Adolfo admitted he hung around with "Northerners" in high school because most people in his high school were Northerners (Nortenos). But by the time of the shooting, he and his brother Leo Hurtado, Jr., hung out with "Southerners" (Surenos).

Leo Hurtado, Sr., was in his bedroom watching television when the shooting occurred. His wife was in the garage lying on a bed.

Juan was in the living room of his house with his brother Oliverio when he heard the gunshots. Juan went outside to see what was going on. He heard two car doors close and then saw a black Honda depart. The vehicle had a loud exhaust. Juan also was able to identify the vehicle for the police later that night because of the distinct taillights on the vehicle.

Ali Machuca was in front of her house on the night in question when she heard gunshots. A dark vehicle sped by her house a short while later. Machuca went to the victim's house to make sure no one had been hurt. While there she heard a vehicle that sounded like the same car that had passed by earlier on a nearby street.

Officer Eliseo Mendez heard numerous gunshots while on patrol in the area. Within minutes a black Honda Civic driving at a high rate of speed passed in front of him, failed to stop for a stop sign, turned off its headlights, and then drove into a residential driveway. The passenger exited the vehicle as Mendez exited his patrol vehicle. Mendez ordered the passenger to stay inside the vehicle, but the passenger proceeded to the front door of the residence. Mendez ordered the passenger to show his hands. When the passenger refused, Mendez shot the passenger with his taser. The passenger was Velasquez. Velasquez dropped a nine-millimeter handgun and a loaded magazine when shot with the taser. A second magazine for the gun was found later in Velasquez's pocket.

Mendez later determined the driver of the vehicle was Glenn Martinez, who also was arrested that night.

Martinez was the prosecution's star witness. Velasquez is Martinez's cousin. Martinez was driving his mother's Honda Civic on the night of the shooting. He had gone to the house of his cousin, Ruben Herrera. Velasquez also was there. Around 9:30 p.m., Velasquez asked Martinez for a ride to "drop something off." They had driven for a short distance when Velasquez asked Martinez to turn right on the street where the Hurtados lived. Velasquez told Martinez to stop along the side of the road. Velasquez exited and walked towards the back of the vehicle. Martinez then heard some gunshots that sounded close by. Seconds later Velasquez reentered the vehicle and told Martinez, "Just get the fuck out of here." Martinez never saw Velasquez with a gun. Martinez drove back to Herrera's house. They were pulled over by a police officer just as they arrived at Herrera's house.

> In exchange for his testimony, Martinez accepted an agreement that would result in a 12-year prison sentence.
>
> In his statement to the police, Velasquez admitted that he associated with the "Northern" structure prison gang.
>
> Gunshot residue tests performed on Velasquez and Martinez five hours after the incident were negative. Testing was able to determine that one of the bullet fragments shared the same characteristics as the handgun recovered from Velasquez, but there was not enough individual detail for an identification. Five of the cartridge cases found at the scene were extracted from this handgun and most likely were fired from the handgun. The other cartridge cases were similar, but there was not enough detail to permit identification.
>
> The prosecution also offered testimony to establish that Leo, Jr., and Adolfo were members of a Sureno criminal street gang. The expert opined that Oliverio associated with "Southern" gangs, and Velasquez was an active member of the Norteno criminal street gang. Finally, the expert opined the crime was committed for the benefit of the Norteno criminal street gang.
>
> Velasquez presented witnesses who attempted to provide him with an alibi for the time of the shooting.

Velasquez, 211 Cal. App. 4th at 1172–74 (footnote omitted).

## III.

## STANDARD OF REVIEW

Relief by way of a petition for writ of habeas corpus extends to a person in custody pursuant to the judgment of a state court if the custody is in violation of the Constitution or laws or treaties of the United States. 28 U.S.C. § 2254(a); 28 U.S.C. § 2241(c)(3); Williams v. Taylor, 529 U.S. 362, 375 (2000). Petitioner asserts that he suffered violations of his rights as guaranteed by the United States Constitution. The challenged convictions arise out of the Tulare County Superior Court, which is located within the Eastern District of California. 28 U.S.C. § 2254(a); 28 U.S.C. § 2241(d).

On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which applies to all petitions for writ of habeas corpus filed after its enactment. Lindh v. Murphy, 521 U.S. 320 (1997); Jeffries v. Wood, 114 F.3d 1484, 1499 (9th Cir. 1997) (en banc). The instant petition was filed after the enactment of the AEDPA and is therefore governed by its provisions.

Under the AEDPA, relitigation of any claim adjudicated on the merits in state court is barred unless a petitioner can show that the state court's adjudication of his claim:

4

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d); Davis v. Ayala, 135 S. Ct. 2187, 2198 (2015); Harrington v. Richter, 562 U.S. 86, 97–98 (2011); Williams, 529 U.S. at 413. Thus, if a petitioner's claim has been "adjudicated on the merits" in state court, the "AEDPA's highly deferential standards" apply. Ayala, 135 S. Ct. at 2198. However, if the state court did not reach the merits of the claim, the claim is reviewed *de novo*. Cone v. Bell, 556 U.S. 449, 472 (2009).

In ascertaining what is "clearly established Federal law," this Court must look to the "holdings, as opposed to the dicta, of [the Supreme Court's] decisions as of the time of the relevant state-court decision." Williams, 529 U.S. at 412. In addition, the Supreme Court decision must "'squarely address[] the issue in th[e] case' or establish a legal principle that 'clearly extend[s]' to a new context to the extent required by the Supreme Court in . . . recent decisions"; otherwise, there is no clearly established Federal law for purposes of review under AEDPA and the Court must defer to the state court's decision. Moses v. Payne, 555 F.3d 742, 754 (9th Cir. 2008) (alterations in original) (quoting Wright v. Van Patten, 552 U.S. 120, 125, 123 (2008)).

If the Court determines there is clearly established Federal law governing the issue, the Court then must consider whether the state court's decision was "contrary to, or involved an unreasonable application of, [the] clearly established Federal law." 28 U.S.C. § 2254(d)(1). A state court decision is "contrary to" clearly established Supreme Court precedent if it "arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts." Williams, 529 U.S. at 413. A state court decision involves "an unreasonable application of[] clearly established Federal law" if "there is no possibility fairminded jurists could disagree that the state court's decision conflicts with [the Supreme Court's] precedents." Richter, 562 U.S. at 102. That is, a petitioner "must show that the state

court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Id. at 103.

If the Court determines that the state court decision was "contrary to, or involved an unreasonable application of, clearly established Federal law," and the error is not structural, habeas relief is nonetheless unavailable unless it is established that the error "had substantial and injurious effect or influence" on the verdict. Brecht v. Abrahamson, 507 U.S. 619, 637 (1993) (internal quotation mark omitted) (quoting Kotteakos v. United States, 328 U.S. 750, 776 (1946)).

The AEDPA requires considerable deference to the state courts. The Court looks to the last reasoned state court decision as the basis for the state court judgment. See Brumfield v. Cain, 135 S. Ct. 2269, 2276 (2015); Johnson v. Williams, 133 S. Ct. 1088, 1094 n.1 (2013); Ylst v. Nunnemaker, 501 U.S. 797, 806 (1991). "When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." Richter, 562 U.S. at 99. Where the state court reaches a decision on the merits but provides no reasoning to support its conclusion, a federal habeas court independently reviews the record to determine whether habeas corpus relief is available under § 2254(d). Walker v. Martel, 709 F.3d 925, 939 (9th Cir. 2013). "Independent review of the record is not *de novo* review of the constitutional issue, but rather, the only method by which we can determine whether a silent state court decision is objectively unreasonable." Himes v. Thompson, 336 F.3d 848, 853 (9th Cir. 2003). The federal court must review the state court record and "must determine what arguments or theories . . . could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of [the Supreme] Court." Richter, 562 U.S. at 102.

///

///

IV.

REVIEW OF CLAIMS

A. Ineffective Assistance of Counsel

In his first and second claims for relief, Petitioner asserts ineffective assistance of appellate and trial counsel. (ECF No. 1 at 7, 9). Respondent contends that the state court's rejection of these claims was reasonable and not a basis for granting habeas relief. (ECF No. 16 at 19, 20). Petitioner raised ineffective assistance of appellate and trial counsel in all of his state habeas petitions. The Tulare County Superior Court denied the petition in a reasoned decision. (ECF No. 1 at 142–43). The California Court of Appeal, Fifth Appellate District denied the petition with citation to multiple cases. (ECF No. 1 at 146). The California Supreme Court summarily denied the petition. (Id. at 120). Generally, federal courts "look through" summary denials and review the last reasoned state court opinion. See Brumfield, 135 S. Ct. at 2276; Ylst, 501 U.S. at 806. Here, the last reasoned opinion is the California Court of Appeal's denial of Petitioner's state habeas petition. See Ylst, 501 U.S. at 802 (defining an unexplained order as one "whose text or accompanying opinion does not disclose the reason for the judgment"); Curiel v. Miller, --- F.3d ----, 2016 WL 3974172, at *4 (9th Cir. 2016) (en banc) ("We have no cause to treat a state court's summary order with citations as anything but a 'reasoned' decision, provided that the state court's references reveal the basis for its decision.").

In denying Petitioner's habeas petition, the California Court of Appeal cited to the following cases: People v. Bittaker, 48 Cal. 3d 1046, 1093–94 (1989); In re Sterling, 63 Cal. 2d 486, 487 (1965); In re Lindley, 29 Cal. 2d 709, 723 (1947); and People v. Macabeo, 229 Cal. App. 4th 486 (Cal. Ct. App. 2014). (ECF No. 1 at 146). In Bittaker, the California Supreme Court found no reversible error for admission of a witness's testimony given pursuant to a plea agreement that required full and complete testimony. 48 Cal. 3d at 1093–94. In Sterling, the California Supreme Court reiterated its rule "that habeas corpus is not available to challenge the use of evidence obtained by an unconstitutional search and seizure" when the "state provides an orderly procedure for raising the question of illegally obtained evidence at or before trial and on appeal." 63 Cal. 2d at 487. In Lindley, the California Supreme Court stated that "[u]pon habeas

corpus, ordinarily it is not competent to retry issues of fact or the merits of a defense, such as insanity, and the sufficiency of the evidence to warrant the conviction of the petitioner is not a proper issue for consideration." 29 Cal. 2d at 723 (citations omitted). In Macabeo, the California Court of Appeal, Fifth Appellate District held that the trial court's failure to exclude evidence from a warrantless cell phone search was not reversible error because the Supreme Court case finding such warrantless searches unconstitutional was issued after Macabeo's trial and while the case was on appeal. 229 Cal. App. 4th at 312–13.[4]

    1. Legal Standard

The clearly established federal law governing ineffective assistance of counsel claims is Strickland v. Washington, 466 U.S. 668 (1984), which requires a petitioner to show that (1) "counsel's performance was deficient," and (2) "the deficient performance prejudiced the defense." Id. at 687. To establish deficient performance, a petitioner must demonstrate that "counsel's representation fell below an objective standard of reasonableness" and "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Id. at 688, 687. Judicial scrutiny of counsel's performance is highly deferential. A court indulges a "strong presumption" that counsel's conduct falls within the "wide range" of reasonable professional assistance. Id. at 687. To establish prejudice, a petitioner must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694. A court "asks whether it is 'reasonable likely' the result would have been different. . . . The likelihood of a different result must be substantial, not just conceivable." Richter, 562 U.S. at 111–12 (citing Strickland, 466 U.S. at 696, 693).

When § 2254(d) applies, "[t]he pivotal question is whether the state court's application of the Strickland standard was unreasonable. This is different from asking whether defense counsel's performance fell below Strickland's standard." Richter, 562 U.S. at 101. Moreover,

---

[4] Macabeo is currently pending review before the California Supreme Court. People v. Macabeo, 338 P.3d 938 (2014) (mem.).

1 because Strickland articulates "a general standard, a state court has even more latitude to
2 reasonably determine that a defendant has not satisfied that standard." Knowles v. Mirzayance,
3 556 U.S. 111, 123 (citing Yarborough v. Alvarado, 541 U.S. 652, 664 (2004)). "The standards
4 created by Strickland and § 2254(d) are both 'highly deferential,' and when the two apply in
5 tandem, review is 'doubly' so." Richter, 562 U.S. at 105 (citations omitted). Thus, "for claims of
6 ineffective assistance of counsel . . . AEDPA review must be 'doubly deferential' in order to
7 afford 'both the state court and the defense attorney the benefit of the doubt." Woods v. Donald,
8 135 S. Ct. 1372, 1376 (2015) (quoting Burt v. Titlow, 134 S. Ct. 10, 13 (2013)). When this
9 "doubly deferential" judicial review applies, the appropriate inquiry is "whether there is any
10 reasonable argument that counsel satisfied Strickland's deferential standard." Richter, 562 U.S.
11 at 105.

      2. Appellate Counsel

13 Petitioner asserts that appellate counsel was ineffective for failing to challenge his
14 conviction on count 1 along with the accompanying gang and firearm enhancements, which were
15 obtained with evidence seized from an illegal cellphone search and his codefendant's coerced,
16 unreliable, and inadmissible testimony. (ECF No. 1 at 7). The Supreme Court has held that
17 appellate counsel does not have a constitutional obligation to raise every nonfrivolous issue on
18 appeal. Jones v. Barnes, 463 U.S. 745, 754 (1983). Rather, the "process of 'winnowing out
19 weaker arguments on appeal and focusing on' those more likely to prevail, far from being
20 evidence of incompetence, is the hallmark of effective appellate advocacy." Smith v. Murray,
21 477 U.S. 527, 536 (1986) (quoting Jones, 463 U.S. at 751–52).

22 Petitioner asserts that his appellate counsel was ineffective for failing to challenge his
23 conviction on the basis that his codefendant's testimony, given pursuant to a plea agreement, was
24 coerced because the plea agreement did not set a specific sentence and provided that the District
25 Attorney's Office would make known to the court the extent and value of the codefendant's
26 cooperation. (ECF No. 1 at 7–8, 21–22). Here, the plea agreement required the codefendant to
27 "cooperate by providing truthful, accurate and complete information to law enforcement officers
28 and by testifying truthfully in grand jury proceedings, all court proceedings, and possible appeals

1   against Co-Defendant Andrew Velasquez." (ECF No. 1 at 21). The plea agreement provided that
2   the codefendant's maximum sentencing exposure was a term of twelve years in state prison. It
3   also required the codefendant "to waive time for sentencing so the District Attorney's Office can
4   review the quality of any assistance to law enforcement," and provided that the "District
5   Attorney's Office would make known to the court the extent and value of the codefendant's
6   cooperation." (Id. at 22). An agreement that requires a witness to testify truthfully in exchange
7   for a plea does not render that witness's testimony coerced even when the agreement leaves
8   sentencing open until after the testimony is given. Nasrichampang v. Woodford, 288 F. App'x
9   367, 368 (9th Cir. 2008) (citing Allen v. Woodford, 395 F.3d 979, 995 (9th Cir. 2005); United
10  States v. Yarbrough, 852 F.2d 1522, 1537 (9th Cir. 1988)). Therefore, appellate counsel's
11  decision not to raise this claim fell within the "wide range" of reasonable professional assistance.
12  Strickland, 466 U.S. at 687.

13          Citing to Riley v. California, 134 S. Ct. 2473 (2014), Petitioner also argues his appellate
14  counsel was ineffective for failing to challenge his conviction on the basis that it relied on
15  evidence from an unlawful cellphone search. (ECF No. 1 at 8–9). At the time Petitioner's
16  opening appellate brief was filed in December 2011, the controlling law in California was People
17  v. Diaz, 51 Cal. 4th 84 (2011), which held that the Fourth Amendment permits a warrantless
18  search of data of a cell phone taken from an arrestee's person. In 2014, the United States
19  Supreme Court in Riley effectively overruled Diaz by holding that officers generally must obtain
20  a warrant before searching a cell phone seized incident to an arrest. Riley, 134 S. Ct. at 2495. A
21  reviewing court should make every effort "to eliminate the distorting effects of hindsight, to
22  reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from
23  counsel's perspective at that time." Strickland, 466 U.S. at 689. Viewed in light of California law
24  at the time, appellate counsel's decision not to raise this claim fell within the "wide range" of
25  reasonable professional assistance, and counsel is not constitutionally deficient for failing to
26  anticipate a decision in a later case. See Smith, 477 U.S. at 536 ("It will often be the case that
27  even the most informed counsel will fail to anticipate a state appellate court's willingness to
28  reconsider a prior holding or will underestimate the likelihood that a federal habeas court will

repudiate an established state rule.").

Based on the foregoing, the state court's denial of Petitioner's ineffective assistance of appellate counsel claim was not contrary to, or an unreasonable application of, clearly established federal law. The state court's decision was not "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Richter, 562 U.S. at 103. Accordingly, Petitioner is not entitled to habeas relief on his first claim.

3. Trial Counsel

**a. Failure to Call Any Defense Experts**

Petitioner asserts that his trial counsel was ineffective for failing to provide an adequate defense at trial by not calling any defense ballistics or gang experts. Petitioner contends that because the case revolved around firearms and gangs, trial counsel was ineffective for relying solely on the prosecution's experts. (ECF No. 1 at 10). With respect to effective assistance of counsel and use of experts, the Supreme Court has stated:

> Criminal cases will arise where the only reasonable and available defense strategy requires consultation with experts or introduction of expert evidence, whether pretrial, at trial, or both. There are, however, "countless ways to provide effective assistance in any given case. Even the best criminal defense attorneys would not defend a particular client in the same way." [Strickland, 466 U.S.] at 689, 104 S. Ct. 2052. Rare are the situations in which the "wide latitude counsel must have in making tactical decisions" will be limited to any one technique or approach. Ibid. It can be assumed that in some cases counsel would be deemed ineffective for failing to consult or rely on experts, but even that formulation is sufficiently general that state courts would have wide latitude in applying it.

Richter, 562 U.S. at 106–07. Moreover, "Strickland does not enact Newton's third law for the presentation of evidence, requiring for every prosecution expert an equal and opposite expert from the defense. In many instances cross-examination will be sufficient to expose defects in an expert's presentation." Richter, 562 U.S. at 111.

To succeed on an ineffectiveness claim, Petitioner "must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." Strickland, 466 U.S. at 689. In the instant case, defense counsel extensively cross-examined the

11

prosecution's experts. (14 RT 1090–1110, 1117–19; 15 RT 1345–60; 17 RT 1768–1820; 18 RT 1822–32, 1841–45). Trial counsel's decision not to call defense ballistics or gang experts could be considered sound trial strategy because "cross-examination [would] be sufficient to expose defects in an expert's presentation." Richter, 562 U.S. at 111. Additionally, Petitioner fails to allege what testimony defense experts would give such that "there is a reasonable probability that . . . the result of the proceeding would have been different." Strickland, 466 U.S. at 694.

### b. Failure to Raise Certain Arguments at Sentencing Hearing

Petitioner also asserts that trial counsel was ineffective because she gave the sentencing court incorrect information regarding the court's sentencing discretion on count 1, which Petitioner alleges could have been reduced to a misdemeanor, and because counsel failed to argue that the gang enhancement in count 1 should be stricken in the interest of justice. (ECF No. 1 at 10–11).

Under California law, there is "a special class of crimes involving conduct that varies widely in its level of seriousness. Such crimes, commonly referred to as 'wobbler[s]', are chargeable or, in the discretion of the court, punishable as either a felony *or* a misdemeanor." People v. Park, 56 Cal. 4th 782, 789 (2013) (citation omitted). When a defendant has been found guilty of a wobbler that was not charged as a misdemeanor, California Penal Code section 17(b) "govern[s] the court's exercise of discretion to classify the crime as a misdemeanor." Id. at 790. As relevant here, section 17(b)(3) provides that a wobbler is a misdemeanor "[w]hen the court grants probation to a defendant without imposition of sentence and at the time of granting probation, or on application of the defendant or probation officer thereafter, the court declares the offense to be a misdemeanor." Cal. Penal Code § 17(b)(3).

In the instant case, the sentencing court was statutorily prohibited from granting probation pursuant to section 12022.53(g), which provides that "[n]otwithstanding any other provision of law, probation shall not be granted to . . . any person found to come within the provisions of this section." Cal. Penal Code § 12022.53(g). Petitioner came within the provisions of section 12022.53 because the jury found true the special allegation that Petitioner personally discharged a firearm during the commission of count 1, shooting at an inhabited dwelling. (3 CT

865–66; 4 CT 940). Further, the court was statutorily prohibited from striking the firearms allegation or the jury's finding. Cal. Penal Code § 12022.53(h). Thus, the sentencing court did not have discretion to grant probation and classify count 1 as a misdemeanor, and trial counsel was not deficient for failing to argue that count 1 should be reduced to a misdemeanor. See Sexton v. Cozner, 679 F.3d 1150, 1157 (9th Cir. 2012) ("Counsel is not necessarily ineffective for failing to raise even a nonfrivolous claim, so clearly we cannot hold counsel ineffective for failing to raise a claim that is meritless.") (citing Knowles v. Mirzayance, 556 U.S. 111, 127 (2009)).

Pursuant to California Penal Code section 1385, a court is allowed to strike a gang enhancement "in furtherance of justice." People v. Fuentes, 1 Cal. 5th 218, 375 P.3d 928, 935–36 (2016); People v. Torres, 163 Cal. App. 4th 1420, 1433 & n.6 (Cal. Ct. App. 2008). Although there is no statutory definition of "furtherance of justice," the California Supreme Court has recognized "several general principles" that have emerged from the caselaw:

> Paramount among them is the rule that the language of [section 1385], "furtherance of justice," requires consideration both of the constitutional rights of the defendant, and *the interests of society represented by the People*, in determining whether there should be a dismissal. At the very least, the reason for dismissal must be that which would motivate a reasonable judge. Courts have recognized that society, represented by the People, has a legitimate interest in the fair prosecution of crimes properly alleged. [A] dismissal which arbitrarily cuts those rights without a showing of detriment to the defendant is an abuse of discretion.
>
> From these general principles it follows that a court abuses its discretion if it dismisses a case, or strikes a sentencing allegation, solely to accommodate judicial convenience or because of court congestion. A court also abuses its discretion by dismissing a case, or a sentencing allegation, simply because a defendant pleads guilty. Nor would a court act properly if guided solely by a personal antipathy for the effect that the three strikes law would have on [a] defendant, while ignoring defendant's background, the nature of his present offenses, and other individualized considerations.

People v. Superior Court (Romero), 13 Cal. 4th 497, 530–31 (1996) (alterations in original) (internal citations and quotation marks omitted).

At the sentencing hearing, the trial judge stated on the record his rationale for Petitioner's sentence. The court acknowledged mitigating factors, particularly Petitioner's "very minimal

1  record of criminal conduct," and the fact that Petitioner's family will be "significantly and
2  severely impacted." (4 CT 966, 969). However, the court found that aggravating factors
3  outweighed those in mitigation. (4 CT 968). In describing the offense, the court stated that
4  Petitioner "essentially emptied a clip of bullets into a home, not just a house, a home where a
5  family lived. Not just kids, not just people he knew, but other people including a mother and
6  father." (4 CT 966). The court noted that there was no evidence that anybody in the house had
7  done anything to instigate Petitioner's actions and stressed that the offense was not merely "a
8  bad choice," but a series of intentional choices: getting into a car and driving to the house,
9  getting out of the car in front of the house, firing approximately thirteen bullets, fleeing at
10 excessive speeds with the car lights out, and refusing to follow an officer's orders. Additionally,
11 the court remarked on Petitioner's failure to accept responsibility for his conduct. (4 CT 966–69).
12 Given the court's statements, it would have been reasonable for trial counsel to conclude that the
13 court would not be receptive to a defense request to strike the gang enhancement in count 1.
14 Counsel is not ineffective for failing to raise a claim if there is "a reasonable appraisal of a
15 claim's dismal prospects for success." Mirzayance, 556 U.S. at 127.

16  Based on the foregoing, the state court's denial of Petitioner's ineffective assistance of
17 trial counsel claim was not contrary to, or an unreasonable application of, clearly established
18 federal law. The state court's decision was not "so lacking in justification that there was an error
19 well understood and comprehended in existing law beyond any possibility for fairminded
20 disagreement." Richter, 562 U.S. at 103. Accordingly, Petitioner is not entitled to habeas relief
21 on his second claim.

22 **B. Cruel and Unusual Punishment**

23  In his third claim for relief, Petitioner asserts that his sentence of thirty-eight years to life
24 constitutes cruel and unusual punishment. (ECF No. 1 at 11). Respondent argues that the state
25 court's rejection of this claim was reasonable. (ECF No. 16 at 27). This claim was raised on
26 direct appeal to the California Court of Appeal, Fifth Appellate District, which denied the claim
27 in a reasoned decision. The claim was also raised in the petition for review, which the California
28 Supreme Court summarily denied. (LD 31). As federal courts review the last reasoned state court

opinion, the Court will "look through" the summary denial and examine the decision of the California Court of Appeal. See Brumfield, 135 S. Ct. at 2276; Ylst, 501 U.S. at 806.

In denying Petitioner's cruel and unusual punishment claim, the California Court of Appeal stated:

> Velasquez argues the sentence imposed for his acts constitute cruel and unusual punishment. The sentence imposed, unaffected by the reversal of the four assault counts in the previous section, consisted of an indeterminate term of 15 years to life for the shooting at an inhabited dwelling count (§ 246), plus 20 years for the personal discharge of a firearm pursuant to section 12022.53, subdivision (c), and a consecutive aggravated term of three years for carrying a loaded firearm by a gang member (former § 12031, subd. (a)(1)).
>
> Both the federal and California Constitutions prohibit cruel and unusual punishment. (U.S. Const., 8th Amend.; Cal. Const., art. I, § 17.) While current federal precedent establishes that sentences that are grossly disproportionate to the crime committed violate the Eighth Amendment, application of this principle to a term of years is exceedingly rare and will be applied only in an extreme case. (*Lockyer v. Andrade* (2003) 538 U.S. 63, 72-73 (*Lockyer*).)
>
> Velasquez relies primarily on two cases interpreting California's Constitution provision prohibiting cruel and unusual punishment -- *In re Lynch* (1972) 8 Cal.3d 410 (*Lynch*) and *People v. Dillon* (1983) 34 Cal.3d 441 (*Dillon*).
>
> *Lynch* held that the punishment imposed on a defendant violates the California Constitution if "it is so disproportionate to the crime for which it is inflicted that it shocks the conscience and offends fundamental notions of human dignity." (*Lynch, supra,* 8 Cal.3d at p. 424.) "Whether a particular punishment is disproportionate to the offense is, of course, a question of degree. The choice of fitting and proper penalties is not an exact science, but a legislative skill involving an appraisal of the evils to be corrected, the weighing of practical alternatives, consideration of relevant policy factors, and responsiveness to the public will; in appropriate cases, some leeway for experimentation may also be permissible. The judiciary, accordingly, should not interfere in this process unless a statute prescribes a penalty 'out of all proportion to the offense' [citations], i.e., so severe in relation to the crime as to violate the prohibition against cruel or unusual punishment." (*Id*. at pp. 423-424.)
>
> The *Lynch* court established three techniques to administer this rule. First, courts should examine the nature of the offense and/or the offender. (*Lynch, supra,* 8 Cal.3d at p. 425.) Second, courts should compare the punishment with the penalty for more serious crimes in the same jurisdiction. (*Id*. at p. 426.) Third, courts should compare the punishment to the penalty for the same offense in different jurisdictions. (*Id*. at p. 427.)
>
> In *Dillon*, the Supreme Court applied the *Lynch* factors to conclude that the sentence imposed on the defendant, who had been convicted of first degree murder under the felony murder rule, violated the California Constitution. (*Dillon, supra,* 34 Cal.3d at p. 489.) The Supreme Court focused on the defendant's youth, immaturity, lack of criminal record, the reluctance of the jury and the trial court to find the defendant guilty of first degree murder, the reluctance of the trial court to impose the life sentence with the possibility of parole, and the fact that all first

> degree murders, including felony murder, were punished identically without consideration for the circumstances of the offense. (*Id*. at pp. 483-489.)
>
> Velasquez focuses on (1) the claimed harshness of his sentence (he must serve 32.3 years before being eligible for parole), (2) his age at the time of the shooting, which was 19, (3) his lack of a criminal record, (4) his graduation from high school and gainful employment, (5) his good behavior while in custody and on bail, (6) his possible intoxication at the time of the shooting, (7) that no one was harmed in the shooting, and (8) the numerous character witnesses who testified to his responsibility, politeness, and lack of indicia of gang activity.
>
> Velasquez's only consideration given to the crime he committed was that no one was hurt. Instead, we see a malicious and callous crime that could have resulted in the deaths of five people. It is only through luck that no one was hurt. We also note the use of a firearm and the gang motivation behind the crime. The Legislature has expressly found that the state is in a state of crisis because of criminal street gangs that terrorize peaceful citizens and neighborhoods and that "present a clear and present danger to the public order and safety." (§ 186.21.) Also, Velasquez was subject to a life sentence only because this crime was committed for the benefit of a criminal street gang. (§ 186.22, subd. (b)(4)(B).) Without the gang element, Velasquez would have been subject to a maximum term of seven years for shooting at an inhabited dwelling. (§ 246.)
>
> We also note that Velasquez's sentence was enhanced by 20 years because he personally discharged a firearm. (§ 12022.53, subd. (c).) The Legislature has spoken on the use of firearms during the commission of a felony, concluding that "substantially longer prison sentences must be imposed on felons who use firearms in the commission of their crimes, in order to protect our citizens and to deter violent crime." [Citation.] (*People v. Garcia* (2002) 28 Cal.4th 1166, 1172.)
>
> These valid policy considerations demonstrate that the Legislature used its skill to appraise the evil to be corrected and considered relevant policy factors and practical options, and the public's will, in determining the appropriate punishment to be imposed in the factual situation presented in this case. (*Lynch, supra,* 8 Cal.3d at p. 423.) We have no difficulty in concluding the Legislature acted well within its authority and that there was no constitutional infirmity. In other words, the sentence imposed did not violate either the state or federal Constitution.

(ECF No. 1 at 44–47).

"The Eighth Amendment, which forbids cruel and unusual punishments, contains a 'narrow proportionality principle' that 'applies to noncapital sentences.'" Ewing v. California, 538 U.S. 11, 20 (2003) (quoting Harmelin v. Michigan, 501 U.S. 957, 996–97 (1991) (Kennedy, J., concurring in part and concurring in judgment)). The Eighth Amendment "does not require strict proportionality between crime and sentence but rather forbids only extreme sentences that are grossly disproportionate to the crime." Graham v. Florida, 560 U.S. 48, 60 (2010) (quoting Harmelin, 501 U.S. at 1001 (Kennedy, J., concurring)). The Supreme Court has advised that "federal courts should be reluctant to review legislatively mandated terms of imprisonment, and

that successful challenges to the proportionality of particular sentences should be exceedingly rare." Ewing, 538 U.S. at 22 (quoting Hutto v. Davis, 454 U.S. 370, 374 (1982)).

In Rummel v. Estelle, the Supreme Court upheld the imposition under a Texas recidivist sentencing statute of a life sentence with the possibility of parole within twelve years for obtaining $120.75 by false pretenses. 445 U.S. 263, 266, 285 (1980). In Solem v. Helm, the Supreme Court found unconstitutional the imposition under a South Dakota recidivist sentencing statute of a life sentence without the possibility of parole for uttering a "no account" check for $100. 463 U.S. 277, 281–82, 284 (1983). In Harmelin v. Michigan, the Supreme Court upheld a first-time offender's sentence of life without the possibility of parole for possessing 672 grams of cocaine. 501 U.S. 957, 961, 996 (1991). In Ewing v. California, the Supreme Court upheld the imposition under California's Three Strikes Law of a twenty-five-years-to-life sentence for felony grand theft of personal property in excess of $400. 538 U.S. at 30–31. In Lockyer v. Andrade, the Supreme Court upheld on federal habeas review a sentence of two consecutive terms of twenty-five years to life under California's Three Strikes Law for theft of $153.54 worth of videotapes. 538 U.S. at 66, 77.

In the instant case, Petitioner was convicted of shooting at an inhabited dwelling, assault with a firearm, carrying a loaded firearm by a gang member, and resisting a police officer. Special allegations that the offense was committed for the benefit of a criminal street gang, Petitioner personally discharged a firearm, and Petitioner personally used a firearm, were found to be true. Petitioner was sentenced to an aggregate imprisonment term of thirty-eight years to life with the possibility of parole. "The availability of parole was a critical distinction between Solem, where the sentence of life without the possibility of parole violated the Eighth Amendment, and Rummel, where the sentence of life with the possibility of parole in 12 years did not violate the Eighth Amendment." Wright v. Crawford, 294 F. App'x 274, 276 (9th Cir. 2008). Here, parole is available to Petitioner, and the seriousness of Petitioner's offenses is more akin to those in Harmelin, where the sentence of life without the possibility of parole for a first-time offender did not violate the Eighth Amendment.

///

17

That is not to say that the Court independently agrees with the duration of the sentence, or believes that it is an appropriate sentence for the crime at issue. The Court takes notice of the various mitigating factors in Petitioner's case, such as his youth at the time of the offense, the absence of a prior criminal record, Petitioner successfully being out on bail for almost a year and a half without incident, and the fact that Petitioner was gainfully employed and the father of two young children. (4 CT 959). Moreover, while acknowledging seriousness of Petitioner's offense, the Court also recognizes that no one was injured as a result of Petitioner's actions. Under the circumstances, Petitioner's sentence is very long indeed. Nevertheless, in light of the Supreme Court's precedent and being mindful that "federal courts should be reluctant to review legislatively mandated terms of imprisonment, and that successful challenges to the proportionality of particular sentences should be exceedingly rare," Ewing, 538 U.S. at 22, the Court finds that the state court's denial of Petitioner's cruel and unusual punishment claim was not contrary to, or an unreasonable application of, clearly established federal law. The state court's decision was not "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Richter, 562 U.S. at 103.

Accordingly, Petitioner is not entitled to habeas relief on his third claim.

## V.

## RECOMMENDATION

Accordingly, the Court HEREBY RECOMMENDS that the petition for writ of habeas corpus be DENIED.

This Findings and Recommendation is submitted to the assigned United States District Court Judge, pursuant to the provisions of 28 U.S.C. § 636 (b)(1)(B) and Rule 304 of the Local Rules of Practice for the United States District Court, Eastern District of California. Within thirty (30) days after service of the Findings and Recommendation, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendation." Replies to the objections shall be served and filed within fourteen (14) days after service of the objections. The assigned

United States District Court Judge will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636(b)(1)(C). The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Wilkerson v. Wheeler, 772 F.3d 834, 839 (9th Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated: **September 13, 2016**         /s/ Erica P. Grosjean
                                      UNITED STATES MAGISTRATE JUDGE